O’Neall J.
delivered the opinion of the Court.
In the argument of this case the first ground was the one mainly relied on. The presiding Judge without impugning the rule supposed to be established in Petty’s case, Harp. 59, that an officer of the bank, the bill of which had been forged, was alone competent, to prove the forgery of the bill for which the prisoner was indicted, admitted the testimony on the ground that the same proof was not necessary on collateral questions. This distinction, I have no doubt, is a sound and good one, for it may be, and often is, utterly impossible, to give as plenary proof, on a collateral circumstance, necessary to complete the *39 proof on the main question, as can he given on the direct issue. Even under the rule laid down in Petty’s case, I should have held the evidence admissible. If the best evidence which the nature of the case will admit, cannot be adduced, then another and equally familiar rule of evidence permits the next best evidence which the nature of the case does admit, to be given.
The bills to prove the forgery of which Mr. Lamar was called, were bills of the Augusta bank. The officers of that bank are resident citizens of the State of Georgia; being out of this State they were not answerable to the process of any of its Courts, and the solicitor, therefore, could not compel their attendance, and hence he was at liberty to resort to the next best evidence: what was that ? unquestionably to prove by any one who was acquainted with their hand-writing, that the signatures of the president and cashier were forgeries. For the purposes of this case we might stop here, without expressing any opinion on the rule supposed to be established by Petty’s case: but the public justice of the country demands that, that rule, if unsound, should be declared so by this Court. Before, however, examining it on its merits, the previous question is presented, whether right or wrong, is it not a decision which is binding on all the Courts of this State. I feel the full force of this objection. For I believe it is better to abide even by an erroneous decision, and thus have a fixed rule of conduct, than to change it as often as circumstances in the opinion of the Court may require. But this respect for decided cases can never be allowed to grow into a rule, that the Court shall never review or reverse a decision manifestly against law and subversive of the ends of justice. This Court has the right to review its own decisions as often as may be necessary, and when erroneous to correct them, and lay down a new rule. In Petty’s case, however, it will be seen that only three out of six Judges concurred in the rule now under consideration, two others reserved the question, and the sixth was absent, so that it had not even the concurrence of a majority, and hence is not a binding authority.
In the English cases the rule was once broadly laid down that the party whose signature was forged could not be a witness to disprove it; but as the subject came 'to be more thoroughly investigated, it was held that when a party to an instrument never had any pecuniary interest which could be affected by it or had *40 none at the trial, he was competent. 2 East. C.L. 999, 1002, and 1003. This was a relaxation of the old rule, but certainly did not go to establish that the witnesses thus rendered competent were the only witnesses who were competent.
In East, 999, it is said, “ But if the party whose hand-writing is forged have no interest in invalidating the instrument in question, there is no doubt but that he is a competent witness: and some cases appear to go the length of establishing that being the best he is the only witness if living to prove the forgery : but that is not confirmed by the current of authorities, to such an extent, .though the testimony of such an one when disinterested, would doubtless be the most satisfactory of any on the question of his own hand-writing.” In Hughes’ case, 2 East, 1002, Le Blanc J. held that the hand-writing of the cashier of the bank of England might be disproved by any one acquainted with it. In McGuires case, 2 East 1002, the forgery of a bank note was established without the aid of the cashier’s testimony, by shewing that the instrument was false in all its parts. In 2 Russell on Crimes, 1506, 1507, 1508, the same conclusion is sustained by this able writer, and he extracts from 1. Ph. Ev. 179, the following strong and decisive language — “ Though it may be generally true that a writer is best acquainted with his own hand writing, yet his knowledge is acquired precisely by the same means, as the knowledge of other persons, who have been in the habit of seeing him write, and differs not so much in kind as in degree. The testimony of such persons, therefore, is not of an inferior or secondary species, nor does it give any reason to suspect as in the case where primary evidence is withheld, that the fact to which they speak is not true. It is the common practice to receive such testimony in ordinary cases, and in prosecutions for capital offences it must be equally admissible.” Starkie in his 2d volume on Evidence, 585, says, “ Another question arises whether when the person whose hand-writing is forged may be called, he must be called; it seems now to be settled, that he need not, although the point has been much discussed and decided differently ; but upon indictments for the forging of bank notes, it has been held that the supposed signature of the bank clerk may be disproved by any person acquainted with his hand-writing, without calling on him. The objection, that secondary evidence is substituted for the best, does not apply in this case; since there is *41 ho such distinction between one man’s knowledge of his own hand-writing, and the knowledge of another on the same subject, as constitutes the former evidence of a higher degree than the latter.” In the Court of Appeals of Virginia, in the case of Martin v. The Commonwealth, it has been very recently decided that in a prosecution for uttering counterfeit bank bills or notes, it is “ not indispensable that the proof of the notes being counterfeit, should be by an officer of the bank. The testimony of other persons well acquainted with the notes of the bank is legal and competent evidence to be weighed by the jury.”
After these authorities, it would appear almost superfluous, to reason against a rule to which they are all opposed; yet in overturning what has once been supposed to be law, a respect for the enlightened Judge who delivered the opinionin Petty’s case, as well as a regard for the community who have acted several years under it, induces me to assign reasons independent of the authorities which I have adduced. Evidence may be properly divided into two great classes, written and verbal; and each of these, and more particularly written evidence, is subdivided into several other classes. Each in its order, is superior to the next succeeding — as, for instance, a record is higher evidence than a deed: so a deed is superior to a parol instrument. In verbal testimony hearsay is entirely excluded, except in cases of reputation and pedigree, and the like, on the ground that positive testimony arising from the knowledge of the witness, is the best and only evidence which can satisfy us of the existence of a fact. It is also true that where there is a subscribing witness to a paper, he must, if alive, and within the jurisdiction of the Court, (unless less evidence is allowed by statute) be produced and examined to prove its execution; and this rule is predicated upon the idea that the subscribing witness is the best evidence which the nature of the case will admit, and that the neglect to call him is a fair presumption that he would, if called, testify against it. These are the only cases in which one description of parol evidence is exclusive of another less certain. In the case before us the bank officer is, it is true, the person who of all others ought to know whether the bill is genuine or not. But because he has more knowledge of it, it does not therefore follow that he alone is competent to testify: it is said he is conversant with all the pri *42 vate marks of the bank, and hence has a test which will enable' him to judge more certainly of the genuineness of the bill. This may be so ; and yet another witness may testify to some single fact shewing the forgery as conclusively as he could do. Take this case for illustration : Suppose the discount clerk is called, and proves the signature of the president, cashier and payee, to be forgeries, and from his knowledge of the engraving, letters, date, and amount of the bill, that it is false in all its parts. This would be very satisfactory evidence, and yet to the essentials of forgery it is precisely the evidence which would be given by one not an officer; such a witness might say, I know the signature of the president and cashier, or one of them, the" signatures or signature are, or is, not theirs, or his, and this would be evidence of the same kind, but not so full as tha( of the officer. It would, too, prove the bill a forgery ; for if any one of the signatures is false, the whole bill is also false. Proof of hand-writing is always a matter of opinion founded on recollection. The witness called compares the paper presented to him with the image left on his mind by his previous acquaintance with the hand-writing, to prove which he is called, and if he thinks they are identical, he proves it; if not identical, he disproves it. It is therefore impossible to say positively that one witness knows a hand-writing better than another. It must be left to the jury between the opinions of conflicting witnesses. In making up that decision, the opportunities and skill of the witnesses will be examined, and generally the witness who had the best opportunity of knowing, and who was the most skilled in hand-writing, would be preferred. Other cases may be put like McGuires case in 2 East 1002: When the bill is so base that any one at all conversant with the bills of the bank would say at once it is forged, surely a bank officer would not be necessary to prove the forgery. Petty’s case is also an illustration of this position; the bill there was a $2 raised to $50. Any skilful eye, from the engraving, the vignette, and the face of it, could detect the forgery. Any one who could have pointed out these differences between it and the genuine bill, would have been competent to prove the forgery. If a bill was so exactly counterfeited that it could not be detected from the signatures and other apparent marks, and its' baseness had to be ascertained by the bank’s private marks, or by other means known only to the officers, then it follows *43 that an officer in that case must be adduced, because no other could give the evidence necessary to the detection of the forgery. From these views we are driven to the necessity of saying, that so much of Petty’s case as is supposed to establish, that none but a bank officer is competent to prove the forgery of a bill on it, is over-ruled. In coming to this conclusion, we would not be thought to disapprove of the practice of compelling the attendance of the bank officer when practicable. This practice meets our entire approbation, and it would be in few cases, and those extraordinary ones, where we should be satisfied with convictions on less certain testimony. Cases may, however, occur, where convictions on testimony other than an officer of the bank may be claimed, and in such cases it will be matter for the jury to consider whether they are satisfied with the testimony. If they are, it is within their, and not our province, of decision.
The 2d ground of the motion is in some degree considered by the remarks already made, but yet I would not be understood to say, that where a witness has no means of knowing whether a bill was good or bad, his opinion of its baseness ought to be received. If he had, however, any knowledge, he might be allowed to state what it was, and his opinion derived from it. But the second ground cannot avail the prisoner in any point of view — for the presiding Judge reports, that the opinion of the witness was not asked for, and that the ground is founded in mistake. The testimony could not therefore have prejudiced the prisoner. It was like many other opinions and expressions of witnesses in Court, merely gratuitous, and not evidence in the cause.
The 3d and 4th grounds relate entirely to the sufficiency of the evidence. This belonged properly to the jury; under the advice of the Court they have thought it sufficient; and the presiding Judge has expressed his satisfaction with the verdict. This Court could not, therefore, even in a case of more doubt than the present, interfere.
Motion refused.